IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH BLOXOM | : | |
| | : | |
| v. | : | Civil No. CCB-05-2632 |
| | : | |
| CHARLES GRIER, et. al. | : | |

## MEMORANDUM

Now pending before the court is defendant Tyson Foods, Inc.'s ("Tyson") motion to dismiss or, in the alternative, for summary judgment. The issues have been fully briefed and no hearing is necessary. Local Rule 105.6. For the reasons that follow, the defendant's motion will be denied.

## BACKGROUND

Plaintiff Joseph Bloxom ("Bloxom") was a passenger in a car traveling northbound on U.S. Route 13 ("13") on July 30, 2004, just south of Pocomoke City, Maryland.[1] Tyson's tractor-trailer was traveling southbound on 13 and was stopped in the right-hand lane at or near a stop sign, preparing to turn right onto Sheephouse Road ("Sheephouse"), a single-lane rural road. Defendant Charles Grier, traveling westbound on Sheephouse, approached the intersection of 13 and Sheephouse and stopped at the stop sign, preparing to turn onto 13. Apparently, the size of the tractor-trailer and the nature of the intersection meant that Grier could not see traffic approaching northbound on 13, and that the tractor-trailer could not negotiate the turn with Grier at the stop-sign. (*See* Plf's Opp'n to Mot. to Dismiss ¶ 5) Although unable to clearly observe

---

[1] According to Bloxom, at that location, 13 consists of two lanes of travel in each direction divided by a grassy median with a posted speed limit of 55 miles per hour. The "facts" recited are those stated by Bloxom.

oncoming traffic, Grier pulled into the intersection, allegedly having been "waved on" or "signaled" by the employee-driver of the Tyson trailer.[2] (*Id.*)  When he did so, a collision occurred between Grier and the car in which Bloxom was a passenger, which had been traveling northbound on 13.  Bloxom allegedly suffered several injuries and has sued both Grier and Tyson.[3]

## ANALYSIS

Tyson has moved to dismiss Bloxom's claim or, in the alternative, for summary judgment. Summary judgment is generally a more appropriate standard of review once the facts have been elicited through the development of the record, whereas a motion to dismiss tests the sufficiency of the pleadings alone.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) ("a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses") (internal quotation marks and alterations omitted).  Here, the parties have submitted only their memoranda of points and authorities in support of their motions and oppositions thereto.  An evidentiary record has not been developed, and the court will therefore decide this matter as a motion to dismiss.

---

[2] Although apparently not disputing for purposes of this motion that its driver "waved" Grier through the intersection, (*See* Def's Mot. to Dismiss, "Statement of Undisputed Facts"), Tyson denies that its driver had any involvement in the accident whatsoever and, as further addressed below, maintains that it cannot be held liable for its driver's "waving on" of Bloxom even if Bloxom's allegations are true.  For the purposes of this motion to dismiss, of course, the court assumes Bloxom's allegations are true.

[3] The driver of the Tyson tractor-trailer has yet to be identified.  Additionally, although Bloxom has averred that Grier was served on October 26, 2005, the court has received no filings or correspondence from Grier and is unaware of his status *vis a vis* this matter.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244. In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions. *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

This motion to dismiss requires the court to consider whether a third party to an accident (the "signaler") who "waves" another driver across an intersection ever owes any duty of care to others when doing so. Specifically, the question is whether such a duty could, as a matter of law, ever be owed to a passenger in the position of Bloxom.

In contending that no such duty exists, Tyson relies on *Myers v. Bright*, 609 A.2d 1182,

1185 (Md. 1992), which held that, "someone wanting to make a left turn is not relieved of responsibility because another motorist signals that the coast is clear." *Myers* does not, however, end the inquiry as Tyson suggests. In *Myers*, the sole defendant was Bright, the driver who, like the role being played here by Grier, relied on the "signaler" and entered the intersection hitting plaintiff Myers. Unlike this case, the third-party signaler in *Myers* was not a party to the action; rather defendant Bright pointed to the signaler's action as a partial defense to his own alleged negligence. *See id.* Bright primarily argued, however, that Myers was contributorily negligent due to her own speeding. *Id* at 1184. The court rejected the contributory negligence argument and stated that, as Bright had a non-delegable duty to be on the look-out for oncoming traffic when pulling out into the intersection, he could not rely on the act of another. *Id*. at 1185.

Here, *Myers* may answer the question of Grier's potential liability, but it does not determine whether Tyson's driver also may be liable. *Myers* itself recognizes as much. First, *Myers* cites to *Kemp v. Armstrong,* 392 A.2d 1161, 1164 (1978), in its discussion of this issue. In *Kemp*, the court held that while a driver crossing traffic (Mr. Spindler) cannot delegate his duty of care to a "signaler," a "signaler" (Kemp) who voluntarily assumes such a duty may be bound to act carefully. 392 A.2d at 1164. Under *Kemp*, the "signaler" may be liable, however, only where there is evidence that the "signaled" driver relied on the signal, and where the signaling can be said to be a proximate cause of the accident. *Id. at* 1165.[4] Second, in a footnote, the *Myers* court notes, "whether or not the unidentified truck driver [the "signaler"] would share

---

[4] Under *Kemp*, any negligence on the part of the "signaler" may be superceded by the independent and later voluntary action of the driver who pulls into traffic. *Kemp* seems to hold, however, that "signaler" liability may rest on whether the "signaled" actually relied on the signal.

4

liability for the accident is another question." 609 A.2d at 1185, n.2.[5]

It should be noted that in the same footnote, however, the *Myers* court recognizes that it rejected a comparable claim in *Dix v. Spampinato*, 358 A.2d 237, 239 (1976).[6] *Dix,* where a pedestrian (Dix) relied on the signal of one stopped driver to begin to cross the street only to be hit by another driver (Spampinato), is distinguishable on the facts and similarly does not end the inquiry. In *Dix*, the pedestrian brought suit against both Spampinato, who ran into Dix, and Horak, who "signaled" to Dix that it was clear to cross. *See id*. at 238. The court found neither defendant liable. *Id*.at 239.[7] *Dix* held that verdicts should be directed in favor of the "signaler," "because of the absence of the signaler's primary negligence, the presence of the pedestrian's contributory negligence, or both." *Id*. at 239.

*Dix*, like *Kemp* and *Myers*, does not squarely address the situation here.  Here, Bloxom was not the "signaled" driver, or pedestrian, who also bore responsibility to check the intersection, like Bright, Dix, and Spindler. Bloxom was a passenger in a car driven by neither the "signaled" nor the "signaler."  Under the case law cited by the parties, it appears that, while Grier also may be liable, a claim against Tyson's driver is not foreclosed.  The claim depends on

---

[5] *Myers* also states that "but Bright [the "signaled" driver] cannot attribute the accident *solely* to him [the "signaler"]. 609 A.2d at 1185 (emphasis added).

[6] While the *Myers* footnote may be somewhat ambiguous, it appears to indicate that the issue in this case is still an open question.  The *Myers* opinion could have, but did not, clearly state that the question was decided as a matter of law.  Rather, the court said only that it had "rejected a comparable claim." *See Myers*, 609 A.2d at 1185, n.2.

[7] Recovery against both Spampinato and Horak was barred by Dix's own contributory negligence, *see Dix*, 358 A.2d at 239, and, it appears, in the case of Horak, because the court found "completely unacceptable the notion that, under the facts of this case, a signal from Mrs. Horak can be taken to mean anything more than that Miss Dix might, with safety, step in front of the vehicle which Mrs. Horak was operating." *Id*.

Grier's actions, whether Grier actually relied on the signal, and on the actions of the yet unidentified Tyson driver.[8]  It also appears that this exact scenario has not yet been decided in a published opinion by a Maryland state court.  It cannot be said, therefore, as a matter of law, that Bloxom has failed to state a claim against Tyson upon which relief can be granted.

    For the foregoing reasons, the defendant's motion to dismiss will be denied.

    A separate order follows.


  __January 3, 2006__                                                  __/s/__
Date                                                                      Catherine C. Blake
                                                                                        United States District Judge

---

[8] Cases in other jurisdictions appear to have the same understanding of *Kemp v. Armstrong*, and the state of the law in Maryland, *see, e.g. Dace v. Gilbert*, 421 N.E.2d 377, 378 (Ill.App. 1981), as does the relevant American Law Reports summary. *See* 14 A.L.R.5th 193.